Filed 7/15/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073339 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F05483) |
| v. | |
| REGINALD BRADFORD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Maryanne G. Gilliard, Judge.  Reversed.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Stephen G. Herndon and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

In 1999 Reginald Bradford was convicted by a jury of three counts of second degree burglary and four counts of petty theft with a prior.  (Pen. Code, §§ 459, 666.)[1]

---

[1] Further undesignated section references are to the Penal Code.

1

The offenses were based on incidents in which Bradford took merchandise from various stores. The jury acquitted him of robbery. (§ 211.) The trial court found he had five prior felony convictions for which he had served prison terms, including two residential burglaries that were strikes under the three strikes law. (§§ 459, 667, subds. (b)-(i), 667.5, subd. (b), 1170.12.) Bradford received four consecutive terms of 25 years to life pursuant to the three strikes law, and an additional four years for the enhancements. He appealed, and this court affirmed the judgment. (*People v. Bradford* (Jan. 29, 2001, C034427) [nonpub. opn.] (*Bradford I*).)

Following the enactment of Proposition 36, the Three Strikes Reform Act of 2012, Bradford (petitioner) filed a petition to recall the sentence and for resentencing. (See § 1170.126.) The trial court denied the petition, finding him ineligible for relief based on a statutory exclusion that applies if "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The trial court reviewed facts recited in this court's opinion affirming the original judgment and concluded petitioner was armed with a deadly weapon, a pair of wire cutters. This appeal followed.

The question is whether the trial court erred in finding petitioner ineligible for resentencing based on evidence petitioner had a pair of wire cutters at or near the time of the "current" offenses, meaning the commitment offenses in the case of a petitioner seeking resentencing. We answer this question in the affirmative. We conclude that the trial court must determine the facts needed to adjudicate eligibility based on evidence obtained solely from the record of conviction. The petitioner has no right to a jury trial or to a formal hearing but must be provided an opportunity to be heard before the court determines ineligibility based on unadjudicated facts. Because it is not supported by the evidence, we shall reverse the trial court's determination that petitioner was ineligible for resentencing under the provisions of Proposition 36.

2

**BACKGROUND**

*1.     New sentencing procedure under Proposition 36*

Under Proposition 36, a defendant who has two or more prior serious and/or violent felonies (strikes) is not necessarily subject to an enhanced "third strike" sentence if the current conviction is not for a serious or violent felony.  Assuming a defendant being sentenced under current law does not fall within one of four enumerated eligibility exceptions, he or she will receive a sentence consistent with that imposed in a second-strike case, i.e., the determinate term (or minimum term for an indeterminate term) is doubled. (§§ 667, subd. (e)(1), (2)(C); 1170.12, subd. (c)(1), (2)(C).)  The four eligibility exceptions apply based on a defendant's current and past convictions, provided "the prosecution pleads and proves any of" them.  (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)[2]

*2.     Resentencing under Proposition 36*

Proposition 36 also provides an avenue for resentencing for certain persons, such as the current petitioner, who are serving previously imposed indeterminate sentences under an earlier version of the three strikes law.  First, the trial court "shall determine whether the petitioner satisfies" the various eligibility criteria.  (§ 1170.126, subd. (f).)  The eligibility criteria are the same criteria, noted above, that apply to defendants awaiting sentencing under the three strikes law as revised by Proposition 36.  Section 1170.126, subdivision (e) provides, in pertinent part:  "An inmate is eligible for resentencing if:  [¶] . . . [¶]  (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or

---

[2]  Sections 667 and 1170.12 contain identical provisions with respect to the issue presented by the current appeal.

clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."**3**

      We are concerned with the third of the enumerated exceptions that apply based on the "current" conviction, at which the petition for resentencing is directed.  The three "current" conviction enumerated exceptions are stated as follows:

      "(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

      "(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

      *"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person."*  (§ 667, subd. (e)(2)(C)(i)-(iii), italics added; see also § 1170.12, subd. (c)(2)(C)(i)-(iii) [containing substantively identical language and identical italicized language].)

---

**3** In its entirety, section 1170.126, subdivision (e) provides:  "An inmate is eligible for resentencing if:

  "(1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

  "(2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.

  "(3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."

If the petitioner is otherwise eligible, the statute provides that he or she shall be resentenced under current law "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)  In exercising its discretion, the court may consider a broad range of evidence, including the petitioner's criminal history and disciplinary record while incarcerated.  (§ 1170.126, subd. (g).)  Ordinarily, the original sentencing judge will hear the petition and conduct resentencing unless that judge is unavailable.  (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1300-1301 (*Kaulick*); § 1170.126, subds. (b), (j).)

3.     ***The current case***

This court granted incorporation by reference of the record on appeal from the original appeal of petitioner's conviction, docketed in this court as *Bradford I*, *supra,* C034427.  A brief recitation of facts will suffice.  The following summary is taken from a review of the trial transcript.  Petitioner took merchandise from stores in the Sacramento area.  Two incidents occurred on May 15, 1998.  When petitioner was apprehended with stolen merchandise following these crimes, police found a pair of wire cutters in his pants pocket.

A third incident occurred on June 12, 1998, at which time there is some evidence in the record indicating petitioner made threatening statements when confronted by a store employee, for example, saying he would "kick [his] ass."  Petitioner did not display any weapon or attack the employee when the employee refused to allow him to leave despite his attempts to do so.  Police were summoned, and petitioner was found in possession of stolen merchandise.  This third incident was the incident for which the jury acquitted petitioner of an additional charge of robbery.

The final incident occurred on June 19, 1998.  Following the final incident, police discovered a pair of wire cutters in petitioner's bag.  There was evidence petitioner had removed electronic sensors from stolen merchandise before discovery of the wire cutters on May 15, 1998, and June 19, 1998.

After petitioner filed the petition to recall his sentence under Proposition 36, the trial court considered his eligibility without further briefing or involvement by petitioner or the People. On February 1, 2013, the trial court found petitioner ineligible for resentencing based on its review of the appellate opinion in the original proceedings. A minute order of the proceedings for that date reflects that the court's determination was ex parte. The trial court determined petitioner was ineligible for resentencing because he was armed with a deadly weapon at the time of the commitment offenses. (See §§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The trial court explained its reasoning as follows: "In its opinion affirming the judgment on appeal, the Third District Court of Appeal summarized the trial evidence as showing that (1) with regard to Counts 1 through 4, '[w]hen apprehended with his clothes-filled bag, defendant had a pair of wire cutters in his pants pocket,' and (2) with regard to Counts 5 and 6, police 'booked . . . a pair of wire cutters, also found in defendant's bag, into evidence.' [¶] This shows that defendant was armed with a deadly weapon at the time of the commitment offenses, as a wire cutter can be used to cut or stab another person in a deadly manner." The trial court's summary of the appellate opinion accurately describes discovery of the wire cutters on the two occasions except insofar as the trial court cited the wrong counts with respect to the second occasion. As correctly described in this court's appellate opinion, the second occasion in which wire cutters were discovered was following the June 19, 1998, incident, which was charged as counts seven and eight. (See *Bradford I*, *supra*, C034427.)

The trial court cited *People v. Woodell* (1998) 17 Cal.4th 448 (*Woodell*) in making the decision at issue here. *Woodell* stems from a line of cases that we will address in detail later in this opinion; these cases describe what materials may be reviewed and considered to prove a prior conviction allegation, such as a strike. In *Woodell*, the California Supreme Court concluded the trier of fact may look at an appellate opinion concerning a prior out-of-state conviction as part of the record of that conviction to determine whether the prior conviction qualifies as a serious felony under the three strikes law. (*Id*. at pp. 450-451.) In the current

6

case, the appellate opinion accurately summarizes some of the evidence presented at trial, as reflected in the trial transcript and otherwise more fully described above.

## DISCUSSION

Petitioner complains the trial court erred in finding him ineligible for resentencing, emphasizing: "The prosecution neither charged appellant with being armed with a deadly weapon nor was such an enhancement ever found true in relation to any of appellant's current convictions. These enhancement allegations additionally were never 'pled and proven' as . . . required under Penal Code section 667, subdivision (e)(2)(C)." In response, the People point out "[t]he 'pled and proven' language . . . cited by appellant [citation], applies only to new cases" and insist "the facts supporting the trial court's ruling . . . are final and may not now be disputed."

Petitioner also argues the court reached its conclusion on an incomplete statement of facts and erred in concluding the wire cutters necessarily qualified as a deadly weapon. He contends the court's determination otherwise implicates his constitutional rights, including the right to a jury trial on a fact used to elevate a defendant's sentence as described in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*) and its progeny, and claims he had a due process right to an evidentiary hearing to contest ineligibility.

The exception cited by the court to find petitioner ineligible for resentencing requires a determination of whether, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) We conclude the trial court must make this factual determination based solely on evidence found in the record of conviction, and while there is no right to a jury trial or a formal hearing, petitioner must be provided an opportunity to be heard before the court determines ineligibility based on unadjudicated facts. Applying these principles, we hold the court's determination that the wire cutters were a deadly weapon is not supported by sufficient evidence.

7

***1.*** ***The statute calls for a factual determination by the trial court as to whether petitioner was armed with a deadly weapon "during the commission" of the offense***

The current case requires us to construe the language of an initiative measure, Proposition 36. The same principles that govern construction of a statute enacted by the Legislature apply in the context of a voter initiative. (*Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1025-1026.) Our review involves a pure question of law and is therefore de novo, without deference to the trial court's own construction of the statute. (*Id.* at p. 1026.) "Courts are required to give meaning to every word of a statute if possible and should avoid a construction that makes any word surplusage. [Citation.] We give the statutory language its usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. [Citation.] If the plain language of the statute is unambiguous and does not involve an absurdity, then the plain meaning governs. [Citation.] Every word and phrase is presumed to be intended to have meaning and perform a useful function. [Citation.] A construction rendering some words in the statute useless or redundant is to be avoided. [Citation.]" (*People v. Johnson* (2012) 211 Cal.App.4th 252, 259.)

The eligibility criteria here refer to something that occurs "[d]uring the commission of the current offense," that being "the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) By referring to those facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which petitioner was convicted. Not only do the criteria at issue here not describe any particular offenses or enhancements, but the reference to an intent to cause great bodily injury does not clearly equate to the most common related enhancement, that being the infliction of great bodily injury.

8

Our interpretation of the statute is further informed by the fact that defendants who are sentenced under the current version of the three strikes law, as revised by Proposition 36, are subject to the same eligibility criteria, which must now be pleaded and proved by the prosecutor under the express statutory language.  Under current law, a defendant facing sentencing is precluded from favorable sentencing treatment if "the prosecution pleads and proves any of" the eligibility criteria, including the one at issue here.  (See §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)  But there is no similar language in the resentencing statute that applies to limit the trial court's consideration of the same eligibility criteria to those circumstances that were pleaded and proved.  The fact that the current statute contains a plead-and-prove requirement evidences that the drafters knew how to impose such a requirement had they chosen to do so.  (See *People v. Tilbury* (1991) 54 Cal.3d 56, 61 (*Tilbury*).)

The language in the resentencing statute that takes the place of the plead and prove language in the "current" statute is section 1170.126.  It states that eligibility for resentencing is limited to situations in which the "current sentence was not imposed for any of the offenses appearing in" the three clauses defining the exclusions.  (§ 1170.126, subd. (e)(2).)  The statutory language referring to the "sentence" having been "imposed for" the described "offenses" most obviously describes the first two of the three eligibility criteria, applying to statutory sex and drug offenses, which are not at issue here.  (See § 667, subd. (e)(2)(C)(i)-(ii); § 1170.12, subd. (c)(2)(C)(i)-(ii).)

As previously noted, the criteria at issue here do not describe a particular offense but apply to conduct relating to a weapon or intent to cause great bodily injury that occurred during the commission of an adjudicated offense.  Under the "last antecedent rule" of statutory construction, " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' [Citations.]" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.)  Here, the last antecedent rule governs, precluding application of the

9

more remote language of section 1170.126 referring to "offenses." The "immediately preceding" language of the particular eligibility criteria describes conduct that occurs during the commission of an offense.

Dictum from one appellate court case also emphasizes the different nature of resentencing proceedings under Proposition 36, in which the trial court is called upon to "determine" the eligibility criteria. The appellate court likewise noted the absence of an express requirement that the eligibility criteria be pleaded and proved by the prosecutor. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1298-1299, fn. 21, citing § 1170.126, subd. (f).) The court then commented that Proposition 36 "does not require a jury finding establishing" the exception at issue here (applying to firearms, deadly weapons, and the intent to cause great bodily injury). (*Kaulick*, *supra*, at p. 1299, fn. 21.)

The recent Court of Appeal decision in *People v. White* (2014) 223 Cal.App.4th 512 likewise rejected an argument that there is a "plead and prove" requirement to establish a petitioner's ineligibility for resentencing. That decision is instructive but does not fully explore the issues we discuss in this opinion, including the rationale for limiting the eligibility determination to the record of conviction. Still more recent Court of Appeal decisions that are not yet final likewise reject a plead-and-prove requirement. (See, e.g., *People v. Blakely* (2014) 225 Cal.App.4th 1042.)

Finally, this construction of the statute is logical since the prosecutor lacked the incentive to plead and prove the eligibility criteria at issue at the time the case was originally adjudicated. A person sentenced before the change in the three strikes law enacted pursuant to Proposition 36 was subject to an indeterminate "third strike" sentence under the then existing law whether or not the prosecutor charged additional enhancements relating to a weapon or the actual infliction of great bodily injury. The prosecutor had no reason to know the law would later be changed to make a defendant eligible for an indeterminate, "third strike" sentence only if certain circumstances were pleaded and proved. Moreover, as noted above, up until the enactment of Proposition 36, there was no reason for a prosecutor to

10

charge that a defendant simply *intended* to inflict great bodily injury as described in the statutory criteria at issue here.

## 2. *The type of factual determination called for by the statute does not violate the* **Apprendi** *line of cases*

We now consider petitioner's claim that permitting the trial court to consider facts not previously adjudicated would violate his right to a jury trial under the *Apprendi* cases. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490 [147 L.Ed.2d at p. 455].) In a subsequent series of cases, the United States Supreme Court applied this rule to California's determinate sentencing law and the federal sentencing guidelines. (See *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856]; *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621] (*Booker*); *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403].) But the United States Supreme Court concluded the rule did not extend in a case that, like the current matter, concerned a particular postconviction proceeding. (*Dillon v. United States* (2010) 560 U.S. 817 [177 L.Ed.2d 271] (*Dillon*).) As we shall explain, a review of the *Dillon* decision compels the conclusion that there is no constitutional violation in considering facts not decided by a jury at a postconviction proceeding pursuant to section 1170.126.

In *Dillon*, the postconviction proceeding was a statutory motion for sentencing reduction pursuant to title 18 United States Code section 3582(c)(2). This federal statute permits the trial court to "reduce the term of imprisonment" of a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (18 U.S.C. § 3582(c)(2).) Dillon sought resentencing based on an

11

amendment to the federal sentencing guidelines for crack cocaine, which was made retroactive in 2008 by the Sentencing Commission. (*Dillon*, *supra*, 560 U.S. at p. 823 [177 L.Ed.2d at p. 282].) Dillon requested not simply a two-level reduction in sentence as authorized by the amendment, but a further reduction consistent with the sentencing factors in his case. (*Ibid*.) Based largely on his postsentencing conduct, he argued that a variance from the amended guidelines range was warranted and that such a variance was authorized after the Supreme Court in *Booker* elected to make the federal sentencing guidelines advisory. (*Dillon*, at p. 823 [177 L.Ed.2d at p. 282].)[4] The district court declined to reduce Dillon's sentence below the term at the bottom of the revised guidelines range, concluding *Booker* was inapplicable to the proceeding at issue. (*Dillon*, at pp. 823-824 [177 L.Ed.2d at p. 282].) The Supreme Court ultimately took the case and considered the applicability of *Booker* and the *Apprendi* line of cases to the sentencing reduction proceedings. (*Dillon*, at pp. 824, 828-829 [177 L.Ed.2d at pp. 282-283, 285].)

The United States Supreme Court characterized the statute permitting the sentencing reduction, 18 United States Code section 3582(c)(2), as "a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," emphasizing that such sentencing modification proceedings were "not constitutionally compelled." *(Dillon*, *supra*, 560 U.S. at p. 828 [177 L.Ed.2d at p. 285].) The court then explained: "Viewed that way, proceedings under [18 United States Code section] 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [section] 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they

---

[4] In finding the federal sentencing guidelines to be unconstitutional, a majority of the court concluded the appropriate remedy would be to render them advisory rather than mandatory. (*Booker*, *supra*, 543 U.S. at pp. 258-259 [160 L.Ed.2d at pp. 659-660].)

affect only the judge's exercise of discretion within that range. '[J]udges in this country have long exercised discretion of this nature in imposing sentence *within [established] limits* in the individual case,' and the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts. *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (emphasis in original). Because [section] 3582(c)(2) proceedings give judges no more than this circumscribed discretion, '[t]here is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused.' *Oregon v. Ice,* 555 U.S. 160, 169, 129 S. Ct. 711, 713, 718, 172 L. Ed. 2d 517 (2009). Accordingly, Dillon's Sixth Amendment rights were not violated by the District Court's adherence to the instruction in [section] 1B1.10 to consider a reduction only within the amended Guidelines range." (*Dillon*, *supra*, 560 U.S. at pp. 828-829 [177 L.Ed.2d at p. 285].) The court found no need to apply the remedial aspect of *Booker*, by which a sentence under the federal sentencing guidelines became advisory, to proceedings held pursuant to the statutory motion for sentencing reduction. (*Dillon*, at pp. 829-830 [177 L.Ed.2d at pp. 285-286].) The distinction the United States Supreme Court drew in *Dillon*, as later emphasized by the court, is between a limited proceeding for a sentencing reduction and a plenary resentencing proceeding. (See *Pepper v. United States* (2011) ___ U.S. ___ [179 L.Ed.2d 196, 213-214].)

The United States Supreme Court's observations in *Dillon* about the sentencing reduction procedure at issue there apply with equal force to the current matter. Reducing the sentence of an individual like the current petitioner, who is serving a valid sentence imposed more than a decade ago, is not constitutionally compelled; it would be an act of lenity. The trial court takes "the original sentence as given"; doing so leads to the inevitable determination that section 1170.126 merely provides a limited mechanism within which the trial court may consider a reduction of the sentence below the original term. Section 1170.126, like the statutory mechanism under federal law for a sentencing

13

reduction, is distinguishable from other sentencing proceedings, and the potential reduction of the sentence is narrowly circumscribed by the statute. The result of a proceeding under section 1170.126 may well be that the petitioner's originally imposed, lawful sentence remains undisturbed. Under the circumstances, the trial court's determination of facts that affect whether the defendant will be resentenced does not implicate the right to a jury trial as described in the *Apprendi* cases. (Cf. *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1305.)

3. ***The trial court's determination is inherently retrospective, akin to establishing the nature of a prior conviction for purposes of a sentencing enhancement, and is limited to the record of conviction***

Having rejected petitioner's statutory and constitutional arguments that the trial court was precluded from making the type of factual determination at issue, we consider the nature of that determination. Specifically, the first issue is what evidence may be considered in making the eligibility determination. We begin, as we must, with the language of the statute itself.

The eligibility determination at issue is not a discretionary determination by the trial court, in contrast to the ultimate determination of whether an otherwise eligible petitioner should be resentenced. Section 1170.126, subdivision (f), describing the eligibility determination, simply provides that "the court shall determine whether the petitioner satisfies the criteria in subdivision (e) . . . ." Only after making that determination does the statute describe any exercise of discretion on the part of the trial court. The statutes specifies: "If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 unless the court, *in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f), italics added.)

14

Another significant point of contrast between the initial eligibility determination at issue and the subsequent, discretionary decision of whether to resentence a petitioner is the much more summary nature of the initial eligibility determination called for under the statute. The statute does not expressly require the trial court to hold a hearing before considering the eligibility criteria, nor is there a reference to the taking of "evidence" or other proceeding that would compel involvement by the parties. The statute simply states: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e)." (§ 1170.126, subd. (f).) By contrast, additional proceedings are required if the trial court determines that the petitioner is eligible for resentencing consideration. In deciding whether to resentence an otherwise eligible petitioner, the trial court considers a nonexclusive set of factors based on the defendant's history both before and after the crime as well as any "evidence" the trial court determines to be relevant "within its discretion" to "whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

Having reviewed the statutory language, it is apparent that an evidentiary hearing is not contemplated by the statute at the initial eligibility stage. Further, no particular statutory procedure describes how the trial court is to go about making the eligibility determination. Consequently, it is necessary for the courts to determine what evidence should be considered and whether to impose additional procedural protections to protect the due process rights of the parties to be heard. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1299, fn. 21 [suggesting in dictum that the People may have the right to present evidence if a court's determination were based on anything other than the undisputed record of conviction].)

In answering the question of "what" the trial court may consider, we find guidance in prior case law for litigating a factual issue concerning a prior conviction required to prove a sentencing enhancement. Like consideration of a prior conviction, the eligibility

15

determination at issue here is necessarily retrospective. Although the statute refers to it as the "current" conviction because it is the conviction for which the petitioner is seeking to be resentenced, the underlying case has been fully litigated. The trial has been held or a plea has been taken, and the defendant is serving his or her sentence. As a practical matter, the current matter is akin to a prior conviction. The trial court treated it as such when it relied upon case law that establishes the parameters under which a prior conviction may be proved as an enhancement. As noted above, the trial court specifically cited *Woodell*, *supra*, 17 Cal.4th 448 in its decision. *Woodell* stems from a line of cases that includes *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*). These cases are instructive.

In *Guerrero* the issue was whether proof of an enhancement that was charged for a prior "serious felony" conviction was limited to matters established by the judgment of conviction itself. (*Guerrero*, *supra*, 44 Cal.3d at p. 345.) The particular issue in that case was whether the defendant's prior burglary convictions qualified as serious felonies for burglary "of a residence." (*Id.* at pp. 345, 348; *id.* at p. 360 (dis. opn. of Broussard, J.).) The California Supreme Court emphasized the enhancement for burglary "of a residence" referred to "conduct" rather than a specific crime defined by the Penal Code. (*Guerrero*, at pp. 346, 355.) The court concluded that allowing the trier of fact to consider the record of conviction to determine the "substance" of the prior conviction was both fair and reasonable under the circumstances, promoting the efficient administration of justice while barring "the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (*Id.* at p. 355.)

Following *Guerrero*, a number of additional cases were decided, many of them considering the issue in the context of prior offense allegations that involve convictions from other jurisdictions. For example, it is frequently necessary to determine whether a prior conviction from another jurisdiction that is alleged as a strike would qualify as a

16

strike under California law. (*Woodell*, *supra*, 17 Cal.4th at p. 453.) The test presupposes the adjudicated crime includes some elements that may, but do not necessarily, establish that it qualifies as a strike under California law. (See *id.* at pp. 453-454; *People v. Myers* (1993) 5 Cal.4th 1193, 1200-1201 (*Myers*).) Consistent with *Guerrero*, the California Supreme Court has held that the trier of fact may consider the entire record of an earlier conviction from another jurisdiction to determine whether it satisfies the elements of a comparable California offense. (*Myers*, at pp. 1195, 1201.)

We conclude the statutory language and framework of Proposition 36 contemplate a determination of a petitioner's eligibility for resentencing based on the record of conviction, as in the line of cases including *Guerrero* and *Woodell*. The statutory language we have previously identified requires the trial court to consider the nature of a petitioner's prior conviction. Specifically, the court must consider whether, during the commission of an offense that has been previously adjudicated at the time of the resentencing proceedings, "the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The current resentencing statute is necessarily retrospective, like proceedings to establish proof of a prior conviction as an enhancement, in that the eligibility determination based on the "current" conviction at issue is based on the previously adjudicated crime. Given the similarities in the two determinations, we conclude the trial court should be guided by *Guerrero* and its progeny and should consider the record of conviction to decide whether petitioner is eligible for resentencing.

Regarding eligibility, the current statute contains no procedure permitting the trial court to consider new evidence outside of the record of conviction, and we decline to imply such a procedure. To do so would impose a cumbersome two-step process in which the trial court would be required to consider new evidence at two stages of the proceedings. Had the drafters of Proposition 36 intended the trial court to consider newly

17

offered "evidence" at the eligibility stage, they would have included express language of the type they did to describe the nature of the court's later, discretionary sentencing determination. (See *Tilbury*, *supra*, 54 Cal.3d at p. 61.) Further, as indicated in *Guerrero* itself, consideration that is limited to the record of conviction promotes the efficient administration of justice while preventing relitigation of the circumstances of a crime committed years ago, which could potentially implicate other constitutional concerns. (See *Guerrero*, *supra*, 44 Cal.3d at p. 355.) Consideration of evidence outside the record of conviction at a resentencing proceeding under Proposition 36 would likewise present significant challenges for convictions that date back nearly 20 years, as witnesses and evidence available at the time the case was adjudicated may no longer be available.

One difference between the current proceeding and a determination under the *Guerrero* and *Woodell* line of cases is that the determination in those cases was of an enhancement that was formally charged in a pending criminal case. Consequently, the *Guerrero* line of cases contemplated notice and a subsequent, contested hearing to resolve whether the enhancement should be sustained. The applicable standard of proof for an enhancement, like a new substantive offense, is proof beyond a reasonable doubt. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082; see also *Woodell*, *supra*, 17 Cal.4th at p. 461.) At issue in the *Guerrero* cases was the nature of a defendant's prior conviction, a determination that must be made with the understanding the prior conviction had been proved beyond a reasonable doubt and that implied findings as to the nature of the conviction can be deduced from the record of conviction. (See *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*); *Woodell*, *supra*, 17 Cal.4th at p. 461.)

Here, the People did not "charge" or even raise the issue of petitioner's ineligibility for resentencing under the statutory criteria. Rather, the current matter concerns a unique postconviction proceeding that called upon the trial court to make a threshold eligibility determination. Consequently, we next consider the respective rights

18

of the parties to be heard or to otherwise challenge the trial court's eligibility determination.

**4.** ***Briefing may be presented to the trial court on the issue of eligibility on or after a petition is filed, and no right to a formal hearing is otherwise compelled on the threshold issue of eligibility for resentencing consideration***

The rights of notice and an opportunity to be heard can be more readily satisfied when, as here, it is the petitioner who initiates a resentencing proceeding under Proposition 36. A petitioner can, and should in most cases be able to, anticipate eligibility issues that arise. Nonetheless, the trial court must be careful to avoid making a precipitous decision without input from the parties.

For purposes of the procedure that must be followed, one somewhat analogous type of motion was the postconviction motion at issue in *Dillon*, whereby a defendant may seek a reduced sentence upon a change of the federal sentencing guidelines. (See 18 U.S.C. § 3582(c)(2).) As explained by the Eleventh Circuit Court of Appeals, the procedure called for a two-part analysis by which a federal district court determines the sentence it would have imposed under the amended guideline range, "holding all other findings made at the original sentencing constant," and then considers whether to impose that sentence or retain the original sentence, considering various factors such as the defendant's danger to the community and postsentencing conduct. (*United States v. Jules* (2010) 595 F.3d 1239, 1242.) The Eleventh Circuit concluded that certain concomitant rights were implicated by that procedure. "The fairness and due process principles embodied in the Federal Rules of Criminal Procedure, the Sentencing Guidelines' policy statements, and the reasoning of our sister courts compel us to hold that each party must be given notice of and an opportunity to contest new information relied on by the district court in a [section] 3582(c)(2) proceeding. Because a section] 3582(c)(2) proceeding is not a *de novo* re-sentencing, courts need not permit re-litigation of any information available at the original sentencing. Nor is either party

19

entitled to any response when the court does not intend to *rely* on new information. Further, although a hearing is a permissible vehicle for contesting any new information, the district court may instead allow the parties to contest new information in writing." (*Jules*, *supra*, 595 F.3d at p. 1245.)

As has been determined, the current matter does not call upon the trial court to consider new evidence in making its determination, which is limited to the record of conviction. Consequently, it is not essential for the court to hold a formal hearing. Considering that the record of conviction is "set" when the trial court considers a petitioner's eligibility for resentencing, the petitioner would be well-advised to address eligibility concerns in the initial petition for resentencing. But if the petitioner has not addressed the issue and the matter of eligibility concerns facts that were not actually adjudicated at the time of the petitioner's original conviction (as here), the trial court should invite further briefing by the parties before finding the petitioner ineligible for resentencing. In the current case, the trial court should have invited the parties to brief the issue of whether it should determine, based on petitioner's possession of wire cutters, that he was armed with a deadly weapon.

By contrast, the People will have ample opportunity to be heard during the court proceedings and to raise any claim that a particular petitioner is ineligible for resentencing consideration. Provided the trial court has preliminarily determined that none of the ineligibility factors apply, the statute then calls upon the court to exercise its discretion to consider evidence of the petitioner's dangerousness. That determination necessarily involves input from the parties and will likely result in a contested hearing. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1296-1300; see also § 1170.126, subd. (i).) Thus, when the trial court indicates it is inclined to proceed to a discretionary determination of whether to resentence a petitioner, the People will have notice the court has tentatively determined that the petitioner meets the threshold eligibility criteria. If the People disagree with that preliminary determination of eligibility, they may file a written

request in the trial court to consider materials in the original record of conviction that the People believe support a determination that the petitioner is ineligible for resentencing. The court may then consider any response by the petitioner before further proceeding in the matter.

**5.      *The trial court erred in concluding petitioner was armed with a deadly weapon on the facts of the current case***

Here, petitioner disputes whether the wire cutters with which petitioner was purportedly armed constituted a deadly weapon based on the underlying facts. As described in one of the standard jury instructions for use in considering whether a defendant was personally armed with a deadly weapon, "[a] *deadly weapon* is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (CALCRIM No. 3130.) Petitioner observes that, in other contexts, such as when the crime is assault with a deadly weapon, the determination of whether an item is a "deadly weapon" that was not designed for use as a weapon has been held to depend on the nature of the item as well as the manner in which it is used. (See, e.g., *People v. Aguilar* (1997) 16 Cal.4th 1023, 1029; CALCRIM No. 875.)

The People cite authority in somewhat different contexts, including the definition of a deadly weapon for purposes of crimes relating to weapons possession. But even jury instructions cited by the People in other contexts refer to the need to consider whether an item that has innocent uses can be considered a deadly weapon. The prosecution may reasonably claim an item such as a tool was possessed for use as a weapon. Relevant factors may include its capabilities and attendant circumstances. (See CALJIC No. 12.42; CALCRIM No. 2500; see also CALCRIM Nos. 3130, 3145.) The concern presented in defining a "deadly weapon" is that when a defendant is in possession of an item that is not a weapon per se, but that may be used as a weapon, further proof is necessary to show that the item was possessed for use as a weapon. (See *People v.*

21

*Fannin* (2001) 91 Cal.App.4th 1399, 1404.) In making this determination it may be necessary to consider "the attendant circumstances, the time, place, destination of the possessor," any alteration of the object, and other relevant facts indicating "the possessor [would] use it as a weapon should the circumstances require." (CALJIC No. 12.42.)

We agree with petitioner that the trial court erred in making a determination that the wire cutters were a deadly weapon. Evidence of the wire cutters was offered to corroborate the fact that petitioner committed the underlying theft offenses, and there is no support from the record to conclude that the item was possessed for use as a weapon. He neither threatened anyone with the wire cutters, nor was he carrying the wire cutters in a manner that suggests potential use as a weapon. There is no evidence the wire cutters were modified for use as a weapon. Wire cutters were discovered after the fact of the crimes on two occasions, and the second time the wire cutters were simply found in petitioner's bag. As petitioner points out, the prosecutor argued in closing argument: "You got wire cutters. You're going to snip the sensor tags off the merchandise."

Under the circumstances, the trial court could not conclude that petitioner was armed with a deadly weapon.[5] No facts establish that the wire cutters were designed for use as a weapon, they were not used as a weapon, and there is no evidence to clearly establish they were being carried for use as a weapon. In fact, the evidence in the trial court record implies the wire cutters were being carried for the purpose of removing security tags from stolen merchandise.

We requested the parties to brief the issue of the applicable standard of proof that the trial court should apply in making the factual determination at issue here. The People

---

[5] In view of our holding, it is unnecessary to reach the issue of what consequence would follow a correct finding that a petitioner *was* armed with a deadly weapon during some but not all of the multiple offenses for which he or she is seeking resentencing. As we find no evidence petitioner was armed with a deadly weapon during any of the offenses, we do not reach this question and express no opinion as to its resolution.

22

argue the standard should be preponderance of the evidence, while petitioner argues due process compels application of a heightened burden of proof. We conclude the standard of proof is not dispositive in this case; petitioner's conviction must be reversed even assuming the burden of proof is a preponderance of the evidence. Therefore, because a determination is unnecessary, we express no opinion regarding the appropriate standard of proof.

## SUMMARY

In summary, we conclude the trial court properly considered evidence contained in the record of conviction to decide whether, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Additionally, the trial court should have solicited briefing by the parties before concluding petitioner was ineligible for resentencing on the facts here. That said, it would be prudent for a petitioner filing a petition for resentencing under Proposition 36 to anticipate the eligibility determination by briefing potential issues before the trial court makes its determination.

## DISPOSITION

The trial court's order concluding petitioner was ineligible for resentencing based on his possession of wire cutters is reversed. The matter is remanded to the trial court for consideration of whether to resentence petitioner under the remaining provisions of section 1170.126.

_____RAYE_____, P. J.

I concur:

_____HULL_____, J.

23

Nicholson, J., Concurring

I concur in part 5 of the Discussion and in the result reached in the majority opinion; however, I do not concur in the remainder of the opinion. Since there was no substantial evidence to support the trial court's finding that petitioner was armed with a deadly weapon when he committed the current offenses and there was no other aspect of the current offenses that disqualifies petitioner from resentencing under the Three Strikes Reform Act, it is unnecessary to consider petitioner's other arguments. This case must be remanded for the trial court to either resentence petitioner or find petitioner too dangerous to resentence under the Three Strikes Reform Act. Nothing stated in the majority opinion, except for the finding that there was no substantial evidence that petitioner was armed with a deadly weapon, is necessary to the disposition or helpful to the court or the parties on remand. Accordingly, I would simply find the evidence was insufficient to sustain the deadly weapon finding and remand for further proceedings.

                                                              NICHOLSON          , J.

1

RAYE, P. J., Concurring.

Although unnecessary to our disposition here, the question of what burden of proof should apply to a court's determination of facts related to an inmate's eligibility for resentencing under Proposition 36 could be a critical issue in future cases. I write separately to explore the significant due process concerns involved and to suggest the appropriateness of a heightened burden of proof by clear and convincing evidence.[1]

Recent authority from the Fifth Appellate District, which is not yet final as of this date, holds that since "a determination of eligibility under [Penal Code] section 1170.126 does not implicate the Sixth Amendment, a trial court need only find the existence of a disqualifying factor by a preponderance of the evidence." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040.) The court's reasoning is consistent with our own insofar as it rejects application of the *Apprendi* line of cases to the determination at issue.[2] The fact the *Apprendi* cases do not govern the current matter means there is no clear constitutional requirement of the right to a jury trial with the concomitant standard of proof beyond a reasonable doubt. But that does not end the inquiry.

"[T]he degree of proof required in a particular type of proceeding 'is the kind of question which has traditionally been left to the judiciary to resolve.' [Citation; fn. omitted.] 'In cases involving individual rights, whether criminal or civil, "[t]he standard of proof [at a minimum] reflects the value society places on individual liberty." '

---

[1] The issue of what standard of proof applies to the preliminary eligibility determination has no bearing on the subsequent discretionary determination by the trial court of whether to resentence the petitioner, which may be based on new evidence. (Pen. Code, § 1170.126, subd. (g).) In this respect, I do not question the particular conclusion of the appellate court in *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1301-1305 (*Kaulick*) that the applicable burden of proof with respect to whether the petitioner poses a danger and should be resentenced is a preponderance of the evidence.

[2] *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*).

1

[Citations.]" (*Santosky v. Kramer* (1982) 455 U.S. 745, 755-756 [71 L.Ed.2d 599, 608] (*Santosky*); see also *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 365 (*Baxter*).) "The standard of proof must satisfy ' "the constitutional minimum of 'fundamental fairness.' " ' " (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1556 (*Jason K.*), quoting *Santosky*, *supra*, 455 U.S. at p. 756, fn. 8 [71 L.Ed.2d at p. 608, fn. 8].) "The function of a standard of proof is to instruct the fact finder concerning the degree of confidence our society deems necessary in the correctness of factual conclusions for a particular type of adjudication, to allocate the risk of error between the litigants, and to indicate the relative importance attached to the ultimate decision." (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 546 (*Wendland*).)

The People argue the applicable standard of proof should be preponderance of the evidence, emphasizing the resentencing procedure pursuant to Penal Code section 1170.126[3] does not implicate the defendant's constitutional right to a jury trial under the *Apprendi* cases, as we have already determined. The People also observe that the standard of proof is not expressly stated in the resentencing statute and assert that Evidence Code section 115 is applicable, which provides in pertinent part: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." Assuming the *Apprendi* cases do not apply, the preponderance of the evidence standard governs a trial court's sentencing choices in an ordinary criminal case. (See *United States v. O'Brien* (2010) 560 U.S. 218, 224 [176 L.Ed.2d 979, 986-987]; *People v. Towne* (2008) 44 Cal.4th 63, 86; *People v. Scott* (1994) 9 Cal.4th 331, 349.) Additionally, the appellate court in *Kaulick*, *supra*, 215 Cal.App.4th at pages 1301-1305 held that the preponderance of the evidence standard governs the subsequent,

---

[3] Further undesignated section references are to the Penal Code.

2

discretionary determination at a Proposition 36 proceeding of whether the petitioner poses a current risk of danger.**4**

Petitioner, by contrast, urges the court to apply a requirement of proof beyond a reasonable doubt, even assuming, as we have concluded, that the current matter does not implicate the right to a jury trial (with the concomitant proof beyond a reasonable doubt requirement) described in the *Apprendi* cases. The "reasonable doubt" standard, generally applicable to cases in which a defendant has not yet been convicted of a crime, is codified in section 1096. Petitioner emphasizes "his freedom for the rest of his life [is] at stake." Petitioner characterizes his interests in the current matter as similar to those in which proof beyond a reasonable doubt has been required in the context of various commitment proceedings, including the commitment of narcotics addicts, persons who are "gravely disabled," and dangerous individuals. (See, e.g., *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 178; *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225-226; *People v. Thomas* (1977) 19 Cal.3d 630, 637-638.) Petitioner correctly observes that the degree of proof required in a particular proceeding is traditionally left to the courts and that the issue implicates due process concerns. (See *Baxter*, *supra*, 120 Cal.App.4th at p. 365.) As a fallback argument, petitioner asserts that if proof beyond a reasonable doubt is not required, due process compels application of the clear and convincing proof standard. Petitioner observes there has been dispute among federal courts as to whether a sentencing factor with a disproportionate effect on a sentence may implicate a heightened burden of proof by clear and convincing evidence. (See *United States v. Pineda-Doval* (9th Cir. 2010) 614 F.3d 1019, 1040-1041; but see *United States v. Villareal-Amarillas* (8th Cir. 2009) 562 F.3d 892, 894-898, and cases cited therein.)

---

**4** Proposition 36 is also known as the Three Strikes Reform Act of 2012.

Case law explains that a variety of factors may be considered by the courts in determining an individual's due process rights, with a flexible balancing standard being considered under both the state and federal Constitutions.  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212-213 (*Today's Fresh Start*); *Jason K.*, *supra*, 188 Cal.App.4th at p. 1556; *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777-778.)  Three factors were articulated by the United States Supreme Court in *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33] (*Mathews*).  These are:  "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  (*Ibid*.)  These factors are considered both in determining the applicable standard of proof as well as other procedural protections that may be required.  (See, e.g., *Santosky*, *supra*, 455 U.S. at pp. 758-768 [71 L.Ed.2d at pp. 609-616]; *Jason K.*, *supra*, 188 Cal.App.4th at pp. 1556-1558.)

The California Supreme Court has further explained:  "With a minor modification, we have adopted the *Mathews*[, *supra*, 424 U.S. 319 [47 L.Ed.2d 18] balancing test as the default framework for analyzing challenges to the sufficiency of proceedings under our own due process clause. . . .  In addition, we may also consider a fourth factor, ' "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." ' [Citations.]"  (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 213.)  The fourth factor is more relevant to the consideration of what procedural rights the parties should be afforded, an issue discussed in this court's opinion.  I begin then with an evaluation of the three factors described in *Mathews*, with particular consideration to how they apply to the standard of proof.

4

First, the liberty interest affected by the proceeding is substantial but not akin to the original proceedings that resulted in the imposition of petitioner's sentence under the three strikes law. In this respect, the current matter is distinguishable from other proceedings in which an individual faces some type of commitment. The current case has been fully adjudicated, and petitioner will not suffer any further deprivation of his liberty interest other than that which was a consequence of his initial lawful conviction, at which time the burden of proof was on the prosecution to prove beyond a reasonable doubt that he was guilty. As noted in this court's opinion and as argued by the People, *Dillon v. United States* (2010) 560 U.S. 817 [177 L.Ed.2d 271] (*Dillon*) indicates a jury trial is not compelled in this postconviction proceeding, which would otherwise have established the standard of proof as "beyond a reasonable doubt." And case law indicates relatively low due process standards may apply to various postconviction proceedings that potentially affect how much time a defendant serves in prison, such as parole proceedings or disciplinary proceedings that result in credit forfeitures. (See *Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 364]; *In re Shaputis* (2011) 53 Cal.4th 192, 209.)

On the other hand, the eligibility determination will decide whether petitioner is entitled to a resentencing determination by the court that is potentially dramatic in its implications, much broader in scope than other postconviction proceedings. The difference between an existing sentence and a revised sentence under Proposition 36 is significant. A lengthy, indeterminate sentence that could amount to most of a petitioner's life may be reduced on resentencing to a relatively short term of years. For example, a petitioner currently serving a single term of 25 years to life will not be eligible for parole until he or she has served the vast majority of that sentence, and the petitioner may still be denied parole at that time. But upon resentencing pursuant to Proposition 36, the underlying felony may carry a term of imprisonment of as little as a few years, even after that term is doubled. The consequence may be the release of the petitioner. But if he or

5

she is ineligible for resentencing consideration, the trial court will not exercise any discretion to consider whether the petitioner presents an unreasonable danger if released. (§ 1170.126, subd. (g)(3).) Consequently, a petitioner who does not present such a danger but is determined by the trial court to be ineligible for consideration will necessarily spend a substantial portion of his or her life in prison. The liberty interest may be characterized in this context as substantial, although it is not significantly different than that underlying other sentencing decisions.

The second factor, the risk of erroneous deprivation of the interest created by the state's chosen procedure, is the most compelling. As noted above, the statute does not call on the parties to present evidence concerning relevant facts of a prior conviction that determine whether the petitioner is ineligible for resentencing. It is in this respect that the current matter is not like either an ordinary sentencing proceeding or the discretionary resentencing proceeding under Proposition 36, at which time the trial court considers evidence bearing on the petitioner's dangerousness. The retrospective nature of the determination presents unique pitfalls. A review of the record of the prior conviction is potentially problematic since the parties had no incentive to fully litigate unpleaded factual allegations at the time of the original trial court proceedings that relate to the petitioner's conduct and intent at the time of the crimes. Obviously, the issue of whether a particular petitioner intended to cause great bodily injury under the eligibility criteria could be the subject of substantial dispute between the parties as it necessarily requires a determination based on circumstantial evidence in virtually all cases. The determination of whether an item is a deadly weapon can likewise be problematic, as can be seen in the current case.

In this respect, it is worth considering the cautionary statements the California Supreme Court made about the somewhat more limited inquiry ordinarily undertaken with respect to establishing proof of a prior conviction as an enhancement, proof that must be established beyond a reasonable doubt. The court explained that it is erroneous

6

to assume that the inquiry is directed at the defendant's conduct itself; "[i]nstead, it is a determination regarding the nature or basis of the defendant's *prior conviction*— specifically, whether *that conviction* qualified as a conviction of a serious felony." (*People v. McGee* (2006) 38 Cal.4th 682, 706 (*McGee*).)  The California Supreme Court elaborated that this "inquiry is a limited one," "with a focus on the elements of the offense of which the defendant was convicted."  (*Ibid.*)  The court observed:  "The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that *the conviction* is of the type that subjects the defendant to increased punishment under California law.  This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court."  (*Ibid.*; see also *People v. Wilson* (2013) 219 Cal.App.4th 500, 510-513.)

The foregoing commentary by the California Supreme Court is not directly applicable in the sense that the Supreme Court was explaining why determining the nature of a defendant's prior conviction did not violate the *Apprendi* cases, a concern not implicated here given the applicability of *Dillon*.  (See *McGee*, *supra*, 38 Cal.4th at pp. 685-686, 706-707.)  But it is nevertheless instructive as to the dangers of making this type of retrospective determination.  To avoid any erroneous deprivation of a liberty that follows the finding a petitioner is ineligible for resentencing consideration, the trial court must be cautious when considering issues of fact that either were or could have been reasonably disputed by the petitioner had they been directly at issue at the time of the earlier proceeding.  Imposing a heightened standard of proof would help to address this due process concern, even though that standard need not necessarily be the "reasonable doubt" standard applicable to proof of a sentencing enhancement.

7

Having discussed the first two factors, I reach the third, that being the countervailing government interest implicated by the procedure. The primary countervailing government interest is the policy interest underlying Proposition 36 as well as the statutory interest identified by the People in applying the preponderance of the evidence standard. Since the statute does not provide the People with an opportunity to present evidence on the issue, there may be cases in which a petitioner who it *could* be shown should be ineligible for resentencing may nevertheless be considered for resentencing because of the absence of evidence in the record of conviction on the disputed point. That being said, these countervailing concerns are minimal given the statutory structure as a whole.

In weighing the rights of the parties, the court must be mindful of the fact that the eligibility determination is but a step in the process of determining whether to resentence a petitioner. Nothing precludes the People from presenting evidence that was absent from the trial record, such as use of a deadly weapon, to show that an otherwise eligible petitioner should not be resentenced under Proposition 36 if the matter proceeds past the eligibility stage to the discretionary, resentencing determination. The statute expressly contemplates that the trial court will consider additional evidence in determining whether to exercise its discretion to resentence the petitioner. (See § 1170.126, subd. (g).) The opportunity to do so likewise bears on the second factor, that being the risk of an erroneous deprivation of an individual's rights. The risk of an erroneous deprivation of an individual's rights may be minimized in a closer case by imposition of a heightened burden of proof without putting the People in a substantially diminished position, whereas imposition of a preponderance of the evidence standard incorrectly assumes the parties are in a similar position going forward in the proceeding. In this circumstance, the countervailing interests of the People are substantially diminished.

It must also be remembered that the People now bear the burden of proof beyond a reasonable doubt with respect to establishing the ineligibility of defendants awaiting

sentencing under the three strikes law, as revised by Proposition 36. Consequently, current defendants are afforded substantial due process rights to both challenge evidence implicating the criteria and to convince a jury that the prosecution has failed to meet its evidentiary burden. As explained in this court's opinion, none of these rights is directly implicated by the current, summary proceedings for determining a petitioner's eligibility for resentencing. But the eligibility criteria in both instances serve a similar purpose under the statutory framework.

Having reviewed the relevant factors, I conclude with a few additional observations. "The required minimum standard reflects a 'societal judgment about how the risk of error should be distributed between the litigants.' [Citation.] When the preponderance of the evidence standard of proof is used, the risk of an erroneous deprivation of the interest is shared 'in roughly equal fashion' between the parties." (*Jason K.*, *supra*, 188 Cal.App.4th at p. 1556.) An analysis of the factors described above suggests that due process may compel a heightened burden of proof in making the determination in the current matter based upon the cold record of petitioner's prior conviction. I would respectfully suggest careful consideration as to whether imposition of proof by clear and convincing evidence is required.

Courts apply a clear and convincing evidence standard, even in civil cases in which the preponderance of the evidence standard is otherwise considered the default standard "when necessary to protect important rights," for example, in cases of fundamental liberty interests such as termination of parental rights or in certain conservatorship proceedings. (*Wendland*, *supra*, 26 Cal.4th at p. 546.) An intermediate standard of proof by clear and convincing evidence may be required "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.' [Citation.]" (*Santosky*, *supra*, 455 U.S. at p. 756 [71 L.Ed.2d at p. 608].) Clear and convincing evidence is an appropriate standard of proof when a balancing of the relevant factors leads to the conclusion that it is

9

" 'inappropriate to ask the individual "to share equally with society the risk" ' " of an erroneous adjudication. (*Jason K.*, *supra*, 188 Cal.App.4th at p. 1557, quoting *Jones v. United States* (1983) 463 U.S. 354, 367 [77 L.Ed.2d 694, 707].)

Although the clear and convincing evidence standard is more typically applied in cases that are civil in nature that implicate important rights, the nature of the proceeding itself is not dispositive. As noted above, the balancing test that governs due process applies in all proceedings, whether criminal or civil in nature. (See *Santosky*, *supra*, 455 U.S. at pp. 755-756 [71 L.Ed.2d at p. 608]; see also *People v. Yokely* (2010) 183 Cal.App.4th 1264, 1272 [identification evidence may be admitted despite illegal lineup in criminal proceeding if the prosecution establishes by clear and convincing evidence an independent basis for the identification].)

The current case is undoubtedly representative of a significant number of cases in which application of either a preponderance of evidence standard or a clear and convincing standard makes no difference. But there are likely to be other cases in which the standard of proof may well be determinative. In those cases there are compelling reasons to consider application of the clear and convincing standard.


                                    RAYE          , P. J.

10